ELLEN F. ROSENBLUM
Attorney General
MICHAEL R. WASHINGTON  #873679
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  Michael.R.Washington@doj.state.or.us

Attorneys for Defendants


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| MOISES LARIOS MARTINEZ,<br><br>        Plaintiff,<br><br>        v.<br><br>OREGON STATE DEPARTMENT OF CORRECTIONS Employees, Agents, Agencies, Public Entity; COLETTE PETERS, Director of Oregon Department of Corrections; SNAKE RIVER CORRECTIONAL INSTITUTION; MARK NOOTH, Superintendent of Snake River Corrections; STEVE SHELTON, Medical Director of Oregon Department of Corrections; GARTH GULICK, Medical Provider, THOMAS BRISTOL, Medical Provider,<br><br>        Defendants. | Case No.  2:14-cv-01161-SU<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW |

# TABLE OF CONTENTS

I.  CERTIFICATE OF CONFERRAL ................................................................. 1

II.  MOTION ...................................................................................................... 1

III.  INTRODUCTION ........................................................................................ 1

IV.  STANDARD OF REVIEW ........................................................................... 5

V.  BACKGROUND .......................................................................................... 5

VI.  ARGUMENT ................................................................................................ 8

    A.  Plaintiff's claims should be dismissed as they are barred by statutes of limitation ................................................................................................ 8

    B.  Plaintiff's state law negligence claims should be dismissed as they are barred by his untimely filing of his notice of tort claim ...................................... 11

    C.  Defendants Peters, Nooth, Shelton, Gulick, and Bristol cannot be liable under *respondeat superior* ................................................................. 12

    D.  Plaintiff's claims against Defendants ODOC and SRCI and the remaining named Defendants in their official capacities are barred by the Eleventh Amendment ..................................................................................... 13

    E.  Plaintiff fails to establish an Eighth Amendment violation ................... 15

    F.  Defendants are entitled to qualified immunity ...................................... 19

VII.  CONCLUSION ............................................................................................. 21

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

# TABLE OF AUTHORITIES

## Cases

*Adams v. Oregon State Police*, 289 Or. 233 (1980) ..................................................................... 11

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................................... 20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................................... 12

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) ................................................................. 3

*Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001) ........................ 3, 14

*Brandon v. Holt*, 469 U.S. 464 (1985) ......................................................................................... 14

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ............................................................................... 4, 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 5

*Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002) .................................................................... 4, 16

*Cory v. White*, 457 U.S. 85 (1982) ............................................................................................ 4, 14

*Davis v. Harvey*, 789 F.2d 1332 (9th Cir. 1986) .......................................................................... 9

*Doe v. Lake Oswego School District*, 353 Or. 321 (2013) ........................................................ 11

*Edelman v. Jordan*, 415 U.S. 651 (1974) .................................................................................... 14

*Enriquez v. Kearney*, 694 F.Supp.2d 1282 (S.D. Fla. 2010) ...................................................... 19

*Estelle v. Gamble,* 429 U.S. 97 (1976) ........................................................................................ 16

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................................................................................... 16

*Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459 (1945) ............................ 14

*Hafer v. Melo*, 502 U.S. 21 (1991) ................................................................................................ 4

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................ 15, 20

*Hunter v. Bryant*, 502 U.S. 224 (1991) ....................................................................................... 20

*Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991) ................................ 5

*Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996) ........................................................ 17, 18, 19

*Jane Doe A v. Special School District*, 901 F.2d 642 (8th Cir. 1990) ........................................ 13

*King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987) ........................................................................... 3, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986) .............................................. 5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*McDonald v. State Children's Servs. Div.*, 71 Or. App. 751 (1984) ............................................. 11

*McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992) ........................................................................ 16

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ..................................................................................... 20

*Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198 (9th Cir. 1999) ...................... 14

*Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978)............................. 12

*Monroe v. Pape*, 365 U.S. 167 (1961) .......................................................................................... 15

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................................................... 20

*Quern v. Jordan*, 440 U.S. 332 (1979) ......................................................................................... 14

*Roman v. Bible*, 169 F.3d 1182 (9th Cir. 1999)............................................................................... 4

*Sain v. City of Bend*, 309 F.3d 1134 (9th Cir. 2002)............................................................ 2, 9, 10

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................................... 20

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ...................................................... 4, 14

*Shallowhorn v. Molina*, 572 F. App'x 545 (9th Cir. 2014) ........................................................... 13

*T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ........................... 5

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ............................................................................... 13

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) ........................................................................ 17

*TwoRivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) ................................................................... 2, 10

*Tyree v. Tyree*, 116 Or. App. 317 (1992) ...................................................................................... 11

*Wilson v. Garcia*, 471 U.S. 261 (1985).......................................................................................... 9

## Statutes

Or. Rev. Stat. § 12.110(1) .......................................................................................................... 2, 9, 10

Or. Rev. Stat. § 30.275............................................................................................................... 1, 3, 11

Or. Rev. Stat. § 30.275(2)(b) .......................................................................................................... 11

## Unites States Code

42 U.S.C. § 1983.................................................................................................................... passim

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**Rules and Regulations**

Fed. R. Civ. P. 3 ........................................................................................................................ 9

Fed. R. Civ. P. 56(a) ............................................................................................................. 1, 5

Or. Admin. R. § 291-124-0005(3) ............................................................................................ 2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## I.    CERTIFICATE OF CONFERRAL

Pursuant to L.R. 7-1(a)(1)(A), Defendants' counsel certifies that he conferred with Plaintiff's counsel by telephone regarding Defendants' motion. Plaintiff's counsel stated that he stands by his objection to Defendants' previous motion for summary judgment on Defendants' current motion. (*See* Doc. # 31). Consequently, the parties are unable to resolve their dispute without Court involvement.

## II.    MOTION

Pursuant to Fed. R. Civ. P. 56(a), Defendants move for summary judgment on the claims in Plaintiff's complaint on the following six grounds: (1) Plaintiff's claims are barred by statute of limitations; (2) Plaintiff's state law claims are barred for failure to timely file a notice of tort claim pursuant to Or. Rev. Stat. § 30.275; (3) claims brought under 42 U.S.C. § 1983 must be based on an individual's personal involvement in depriving a constitutional right and cannot succeed under a *respondeat superior* theory; (4) Plaintiff's federal claim against Defendants Oregon Department of Corrections and Snake River Correctional Institution and the remaining Defendants in their official capacity is barred by the Eleventh Amendment; (5) Defendants did not violate Plaintiff's Eighth Amendment right to be free from deliberate indifference to his serious medical needs; and (6) Defendants are shielded from liability by the doctrine of qualified immunity. This motion is supported by the legal arguments below and the Declarations of Dr. Steve Shelton and Michael Washington submitted separately and concurrently.

## III.    INTRODUCTION

Plaintiff filed a civil complaint on July 21, 2014 alleging that the named Defendants violated his Eighth Amendment right to be free from deliberate indifference to his serious medical needs by failing to promptly inform him that he had contracted Hepatitis B & C and failing to adequately treat him for those conditions. (Doc. # 1, ¶¶ 45-56.) Plaintiff brought that claim against Defendants under 42 U.S.C. § 1983 (Section 1983). (*Id*. at ¶ 15.) Plaintiff also alleged that Defendants violated the state law tort of negligence with a negligent provision of

Page 1 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW
MRW/ts6/7647661-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

medical care; a negligent provision of infection control, and a failure to implement Hepatitis C Virus education.  (*Id*. at ¶¶ 57-94.)  Regarding those negligence claims, Plaintiff specifically alleges that Defendants failed to comply with Or. Admin. R. § 291-124-0005(3) when they failed to provide him with a timely diagnosis of Hepatitis B and when they failed to treat him for that condition.  (*Id*. at ¶¶ 58-59.)  He specifically alleges that Defendants breached their duty to train inmate cosmetology workers in the appropriate methods of handling and disposing of bio-hazardous material to prevent the spread of the Hepatitis virus.  (*Id*. at ¶¶ 74-75.)  Plaintiff also specifically alleges that Defendants breached their duty to provide him with counseling and education on risk reduction behaviors and the symptoms for the Hepatitis virus.  (*Id*. at ¶¶ 86-87.)  For the reasons stated below, Defendants are entitled to summary judgment on each of Plaintiff's claims.

Each of Plaintiff's claims is barred by the statute of limitation.  In Oregon, the two-year statute of limitations for personal injury actions, Or. Rev. Stat. § 12.110(1), applies to civil rights actions under Section 1983.  *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002).  A Section 1983 action is commenced in federal district court for purposes of the statute of limitations when the complaint is filed.  *Id*. 309 F.3d at 1138.  Accordingly, Plaintiff must have filed his complaint — thereby "commenc[ing]" the action — within two years of the date he knew or had reason to know of the injury which forms the basis for this action.  Or. Rev. Stat. § 12.110(1); *Sain*, 309 F.3d at 1137; *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  Plaintiff filed his complaint on July 21, 2014.  Consequently, all allegations regarding his federal and state law claims must have occurred between July 21, 2012 and July 21, 2014.  Plaintiff alleges that it was revealed to him that he had contracted Hepatitis B in May 2010.  (Doc. # 1, ¶ 28.)  He alleges further that during or about July 2012, he contracted Hepatitis C as a result of inadequate medical treatment by Defendants.  (*Id*. at ¶ 42.)  Plaintiff's medical records show that he was diagnosed with Hepatitis C on July 9, 2010.  (*Declaration of Steven Shelton*, ¶ 14.)

Accordingly, because Plaintiff's allegations and evidence in the record show that Plaintiff knew

of the injury that forms the basis for this action outside the statute of limitations, his claims are time barred and should be dismissed.

Plaintiff's state law claims are barred by his failure to timely file a notice of tort claim. Under Or. Rev. Stat. § 30.275, a notice of claim must be received by the Oregon Department of Administrative Services, Risk Management Division within 180 days of the alleged injury. Despite knowing that he contracted Hepatitis B in May 2010 and Hepatitis C in July 2012, Plaintiff's tort claim notice was not received by Risk Management until February 8, 2013. (*Declaration of Michael Washington*, ¶ 4, **Exhibit 1**, Plaintiff's "Notice of Tort" dated January 7, 2013.) Because May 2010 and July 2012 are more than 180 days from February 8, 2013 when Risk received Plaintiff's tort claim notice, his notice is untimely and his state law claims are barred.

As a general rule, "liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Accordingly, "state officials are not subject to suit under § 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194. Here, Plaintiff alleges no specific involvement by Defendants Peters, Nooth, Shelton, Gulick, and Bristol in the alleged deprivation of his constitutional rights, and therefore, those Defendants are entitled to summary judgment as a matter of law as to Plaintiff's federal claim.

A state or its officials or agencies may not be sued by private individuals in federal court unless the state has unequivocally consented to that action, or Congress has unequivocally expressed its intent under the Fourteenth Amendment to waive immunity of the States. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). The Eleventh Amendment otherwise bars any such action regardless of the nature of the relief sought. *Cory v. White*, 457 U.S. 85 (1982). Therefore,

Page 3 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

MRW/ts6/7647661-v1

Defendants Oregon Department of Corrections (ODOC) and Snake River Correctional Institution (SRCI) are entitled to summary judgment as to Plaintiff's federal claim asserted against them. The Eleventh Amendment also bars actions for damages against state officials, who are sued in their official capacity. *Roman v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). By contrast, the Eleventh Amendment does not bar actions for damages against state officials who are sued in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiff sues all Defendants in their official and individual capacity. Defendants Peters, Nooth, Shelton, Gulick, and Bristol are entitled to summary judgment as to Plaintiff's federal claim asserted against them in their official capacities. To the extent that Plaintiff sues Defendants in their individual capacities; his federal claim may proceed subject to other defenses.

To prevail on an Eighth Amendment deliberate indifference claim, a prisoner must establish both (i) he suffered an objectively serious illness or injury while incarcerated and (ii) prison officials were subjectively aware of the seriousness of the condition and deliberately denied or delayed access to medical care that could reasonably have been provided. *See Clement v. Gomez*, 298 F.3d 898, 904-905 (9th Cir. 2002) (so stating). Plaintiff has failed to establish both of those points in his allegations in light of Dr. Steve Shelton's declaration and therefore, Defendants are entitled to summary judgment as to Plaintiff's federal claim.

Under the doctrine of qualified immunity, government officials are shielded from suit when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances they confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Because Defendants believed that they acted properly in their providing medical treatment to Plaintiff, they are entitled to qualified immunity as to Plaintiff's federal claim.

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment and request that it dismiss Plaintiff's complaint with prejudice in its entirety.

Page 4 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
                MEMORANDUM OF LAW
        MRW/ts6/7647661-v1

                        Department of Justice
                        1162 Court Street NE
                        Salem, OR 97301-4096
                    (503) 947-4700 / Fax: (503) 947-4791

## IV.    STANDARD OF REVIEW

A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the nonmoving party, drawing in his favor all reasonable inferences from the facts.  *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  The moving party bears the initial burden of informing the court of the basis of its motion and providing evidence that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the nonmoving party must "present significant probative evidence tending to support its claim or defense."  *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).   The nonmoving party fails to meet its burden if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

## V.    BACKGROUND

On July 21, 2014, Plaintiff filed his complaint in this case.  (Doc. # 1.)   In that complaint, Plaintiff makes allegations beginning in May 2010 regarding his contracting Hepatitis B and in June 2010 regarding his contracting Hepatitis C.  (*Id*. at ¶¶ 28 & 30.)

Plaintiff came into ODOC custody on April 16, 2010 and was transferred to SRCI on May 11, 2010.  (Shelton Decl., ¶¶ 3 & 12.)  On June 22, 2010, Dr. Jodean Elliott-Blakeslee ordered blood screens on Plaintiff for Hepatitis A, B, and C.  (*Id*. at ¶ 13.)  On June 24, 2010, blood was drawn from Plaintiff to be tested for the Hepatitis A, B, and C viruses.  (*Id*. at ¶ 14.) In an effort to keep inmates from spreading the Hepatitis virus, if they give consent, they are vaccinated as soon as possible after their arrival to ODOC.  (*Id*. at ¶ 15.)  So, on July 2, 2010, Plaintiff was given the first in a series of combined vaccine injections for Hepatitis A & B.  (*Id*.) On July 9, 2010, the test results from Plaintiff's blood draw revealed that Plaintiff had been previously infected with Hepatitis B and had cleared the B virus from the infection, and the

Page 5 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
            MEMORANDUM OF LAW
        MRW/ts6/7647661-v1

                            Department of Justice
                            1162 Court Street NE
                            Salem, OR 97301-4096
                        (503) 947-4700 / Fax: (503) 947-4791

results also revealed that he had chronic Hepatitis C.  (*Id*. at ¶ 14.)  The test results were negative for Hepatitis A.  (*Id*.)

On August 5, 2010, Dr. Elliott-Blakeslee had an appointment with Plaintiff in which she evaluated him for Hepatitis C and noted that he asked for treatment for the virus.  (*Id*. at ¶ 17.) Dr. Elliott-Blakeslee also gave Plaintiff a booklet on Hepatitis C, which Plaintiff informed her that he had a friend who could translate it from English to Spanish for him.  (*Id*.) Dr. Elliott-Blakeslee submitted a request to the Therapeutic Level of Care (TLOC) Committee for a liver biopsy for Plaintiff on that date, which was approved on August 11, 2010.  (*Id*.) Plaintiff had his blood drawn again on August 27, 2010 to be tested for Hepatitis C and that test again confirmed that he had the virus.  (*Id*. at ¶ 18.)  On October 5, 2010, Plaintiff had a liver biopsy, which revealed on October 13, 2010 that he was at stage 2 fibrosis of the liver.  (*Id*. at ¶¶ 23 & 24.)  The TLOC Committee determined that Plaintiff did not meet the criteria for needing medical treatment at that time and planned to follow Plaintiff with clinical appointments and noted that Plaintiff would be eligible for another biopsy in four to five years.  (*Id*. at ¶ 24.) At Plaintiff's perpetuation deposition, he denied receiving a liver biopsy in 2010 and claims he was not given one until 2012 when he was told that he had already contracted Hepatitis C and was contagious.  (Larios-Martinez Dep. 44:07 – 44:13, July 8, 2016.)  Plaintiff also stated at his perpetuation deposition that he was not diagnosed with Hepatitis C until 2012.  (Larios-Martinez Dep. 29:14 – 29:22, July 8, 2016.)  Plaintiff went on to state that before he was informed that he had Hepatitis C, he was treated for tuberculosis for three months and that was three to four months before he was told that he had Hepatitis C.  (Larios-Martinez Dep. 30:12 – 31:04, July 8, 2016.)

Plaintiff was given a Tuberculin Skin Test on January 21, 2010 after his arrival into ODOC custody, which revealed that he had the tuberculosis infection, but not the disease. (Washington Decl ¶ 5, **Exhibit 2**, Plaintiff's ODOC Medical Records, p. 2.)  Plaintiff began treatment for that condition in June 2010, which he discontinued on October 29, 2010 because he

Page 6 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
            MEMORANDUM OF LAW
        MRW/ts6/7647661-v1

                        Department of Justice
                        1162 Court Street NE
                        Salem, OR 97301-4096
                    (503) 947-4700 / Fax: (503) 947-4791

stated that it was making him ill.  (*Id*. at ¶ 5, **Exhibit 2**, p. 3.)   Plaintiff's medical records show that he was receiving treatment for tuberculosis and at the same time that ODOC was monitoring his Hepatitis C condition.

Plaintiff's blood was drawn ten times — approximately every six weeks — from October 27, 2010 through February 10, 2012 to monitor his Hepatitis C condition.  (Shelton Decl. ¶ 25.)   On February 24, 2012, Plaintiff was seen by Dr. Thomas Bristol after complaining of pain and numbness in his left arm.  (*Id*. at ¶ 26.)   Test results showed that Plaintiff had slowly declining platelets with mild elevated liver enzymes and Dr. Bristol questioned whether those findings were related to Plaintiff's Hepatitis C infection and discussed Plaintiff's case with the TLOC Committee.  (*Id*.)  On February 29, 2012, the TLOC Committee recommended that Plaintiff receive a fibroSURE test, which is a blood test that is useful in evaluating liver fibrosis.  (*Id*. at ¶ 27.)  On March 21, 2012, the fibroSURE test results showed that Plaintiff was in fibrosis stage 1-2, which was consistent with his liver biopsy in 2010.  (*Id*. at ¶ 29.)  However, due to Plaintiff's falling platelet count, Dr. Bristol sought a hematology consult for Plaintiff.  (*Id*.)

On April 18, 2012, Plaintiff had a hematology consult with Dr. William Kreisle at St. Luke's Mountain States Tumor Institute in Boise, Idaho who assessed Plaintiff as having a mild deficiency in platelets, which was probably secondary to his liver disease.  (*Id*. at ¶ 31.)  Dr. Kreisle did not recommend any intervention other than treatment for Plaintiff's liver disease.  (*Id*.)  On April 25, 2012, the TLOC Committee recommended that Plaintiff have a second liver biopsy.  (*Id*. at ¶ 32.)  On May 30, 2012, Plaintiff received his second liver biopsy to determine the stage of his liver fibrosis.  (*Id*. at ¶ 36.)  On June 5, 2012, Plaintiff's liver biopsy results showed that he was at stage three fibrosis of the liver and he was now eligible for Hepatitis C treatment.  (*Id*. at ¶ 37.)  On June 13, 2012, the TLOC Committee approved Plaintiff for Hepatitis C treatment.  (*Id*. at ¶ 38.)  On August 29, 2012, Dr. Garth Gulick requested the medication to treat Plaintiff for Hepatitis C.  (*Id*. at ¶ 39.)  On September 5, 2012, Plaintiff began

Page 7 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
                 MEMORANDUM OF LAW
           MRW/ts6/7647661-v1

                                Department of Justice
                                1162 Court Street NE
                                Salem, OR 97301-4096
                          (503) 947-4700 / Fax: (503) 947-4791

taking a "State-of-the-Art" combination of Ribavirin, Boceprevir, and Pegasys to eradicate the genotype 1b, Hepatitis C virus.  (*Id*. at ¶ 40.)

After Plaintiff was on the medication for 12 weeks, a blood draw revealed no detection of the Hepatitis C virus.  (*Id*. at ¶¶ 46-47.)  Plaintiff completed Hepatitis C treatment in August 2013 and test results revealed that he had been cured of the infection.  (*Id*. at ¶ 54.)  Defendants were not negligent nor did they act with deliberate indifference in their treatment of Plaintiff for Hepatitis B and C.  (*Id*. at ¶ 55.)  When Plaintiff entered ODOC custody, he had already been previously infected and had recovered from Hepatitis B and had been infected with Hepatitis C and still had it.  (*Id*.)  The fact that Plaintiff was at stage two fibrosis of the liver when he entered ODOC custody showed that he had been infected with Hepatitis C not just for years, but for decades before his incarceration.  (*Id*.)  No evidence supports that Plaintiff contracted Hepatitis B or C while in ODOC custody.

## VI.    ARGUMENT

### A.    Plaintiff's claims should be dismissed as they are barred by statutes of limitation.

Plaintiff seeks relief under the Eighth Amendment and 42 U.S.C. § 1983 claiming that Defendants acted with deliberate indifference to his serious medical needs resulting in his contracting the Hepatitis B and Hepatitis C viruses in his sole federal claim in his complaint. (Doc. # 1, ¶¶ 15 & 46.)  Plaintiff also seeks relief in three state law tort claims for negligence claiming that Defendants acted with negligence in providing him with medical treatment; in providing inmate workers with infection control training, and in providing him with counseling and education regarding risk reduction behaviors and the symptoms of the Hepatitis C virus.  (*Id*. at ¶¶ 57-94.)  However, Plaintiff's claims are time barred under the statute of limitations and should be dismissed on that basis.

Section 1983 does not state an applicable statute of limitations.  When Congress has not provided a time limitation for a federal cause of action, the court applies the local statute of

Page 8 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
            MEMORANDUM OF LAW
            MRW/ts6/7647661-v1

limitations. *Wilson v. Garcia*, 471 U.S. 261 (1985). In *Wilson*, the U.S. Supreme Court held that each state must apply "the one most appropriate statute of limitations for all [of its] § 1983 claims." 471 U.S. at 275. The District Court of Oregon has found that the two-year statute of limitations under Or. Rev. Stat. § 12.110(1) applies to Section 1983 actions. *Sain*, 309 F.3d at 1139; *Davis v. Harvey*, 789 F.2d 1332, 1333 (9th Cir. 1986). Fed. R. Civ. P. 3 serves as the tolling rule for borrowed state statute of limitations in Section 1983 actions and provides that "a civil action is commenced by filing a complaint with the court." *Sain*, 309 F.3d at 1138. Thus, the action commenced in this case on July 21, 2014 when Plaintiff filed his complaint. (Doc. # 1.) Consequently, all allegations regarding his federal and state law claims must have occurred between July 21, 2012 and July 21, 2014.

Plaintiff alleges that it was revealed to him that he had contracted Hepatitis B in May 2010. (Doc. # 1, ¶ 28.) He alleges further that during or about June 2010, he was listed as having Hepatitis C, but he was not informed of that fact. (*Id*. at ¶ 30.) Plaintiff alleges that he was not informed that he had Hepatitis C until July 19, 2012 when he was informed that he was in "phase 3 of 'bad liver.'" (*Id*. at ¶ 41.) Plaintiff's allegations have no merit.

Plaintiff's medical records show that a test result on July 9, 2010 revealed that he had chronic Hepatitis C when he came into ODOC custody. (Shelton Decl. ¶ 14.) Moreover, those test results showed that Plaintiff had been infected with Hepatitis B and had been cleared of the infection before he came into ODOC custody. (*Id*.) Plaintiff was informed that he had chronic Hepatitis C no later than August 5, 2010 as he requested treatment at that time. (*Id* at ¶ 17.) Plaintiff must have filed his complaint — thereby "commenc[ing]" the action — within two years of the date he knew or had reason to know of the injury which forms the basis for this action. Or. Rev. Stat. § 12.110(1); *Sain*, 309 F.3d at 1137; *TwoRivers*, 174 F.3d at 991. Plaintiff alleges that ODOC was responsible for his contracting Hepatitis B and C, but the record shows that he knew that he had Hepatitis C on August 5, 2010. Therefore, he should have filed his complaint no later than August 5, 2012.

Page 9 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
                MEMORANDUM OF LAW
        MRW/ts6/7647661-v1

                        Department of Justice
                        1162 Court Street NE
                        Salem, OR 97301-4096
                    (503) 947-4700 / Fax: (503) 947-4791

Because Plaintiff filed his complaint on July 21, 2014, his allegations supporting his claims must have occurred between July 21, 2012 and July 21, 2014.  Plaintiff makes no allegations that support his claims that fall within the statute of limitations.  The closest he comes to that is that on July 19, 2012, he received the results of his final liver biopsy, which showed that he was at stage three of "bad liver" confirming that he had Hepatitis C.  However, that was two days before the statute of limitations began to run in this case based on when Plaintiff filed his complaint on July 21, 2014.  The only allegation that Plaintiff makes that appears to support his claims is that during August 2012, he received his last Hepatitis treatment and claims that he did not receive any referrals to agencies for treatment for Hepatitis C once he was released from ODOC custody.  (Doc. # 1, ¶¶ 43, & 44.)  However, those allegations have no merit.  First, Plaintiff was informed that he had Hepatitis C on August 5, 2010.  (Shelton Decl. ¶ 17.)  Second, he was informed that he was at stage three fibrosis of the liver on June 5, 2012.  (*Id*. at ¶ 37.)  Third, Plaintiff completed Hepatitis C treatment in August 2013 and was cured of the Hepatitis C virus at that time.  (*Id*. at ¶ 54.)  Moreover, he was not released from ODOC custody until January 3, 2014.  (*Id*. at ¶ 10.)  In any event, Plaintiff stated at his perpetuation deposition that upon his release from prison, he was told that he needed to get a liver biopsy in six months and that he was to continue his medical regimen, however, he did not do so because he did not have the resources.  (Larios-Martinez Dep. 51:24 – 52:06.)

Plaintiff's first two allegations occurred outside the statute of limitations and even though Plaintiff's claim that he was released without ODOC providing him with information for treatment outside the institution occurred within the statute of limitation window, it nevertheless has no merit because he was cured of Hepatitis C before he was released from custody and as explained below, he failed to timely file his notice of tort claim as to that claim.  Accordingly, because Plaintiff's allegations regarding his federal claim of deliberate indifference are outside the statute of limitations, that claim is time barred and should be dismissed on that basis.

Page 10 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
MEMORANDUM OF LAW
MRW/ts6/7647661-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**B.    Plaintiff's state law negligence claims should be dismissed as they are barred by his untimely filing of his notice of tort claim.**

Plaintiff seeks relief in three state law tort claims for negligence claiming that Defendants acted with negligence in providing him with medical treatment; in providing inmate workers with infection control training, and in providing him with counseling and education regarding risk reduction behaviors and the symptoms of the Hepatitis C virus.  (*Id.* at ¶¶ 57-94.)  However, those claims should be dismissed as they are barred by Plaintiff's failure to timely file his notice of tort claim as to those claims in his complaint.

The Oregon Tort Claims Act (OTCA) requires that a plaintiff provide notice of claim within 180 days after the alleged injury.  Or. Rev. Stat. § 30.275(2)(b).  For a plaintiff to meet the requirement of giving notice of a claim within 180 days of the alleged injury, the relevant public body must receive that notice within 180 days.  *See McDonald v. State Children's Servs. Div.*, 71 Or. App. 751, 754 (1984); *Tyree v. Tyree*, 116 Or. App. 317 (1992) (so stating).  Here, a notice of claim must be received by the Oregon Department of Administrative Services, Risk Management Division within 180 days of the alleged injury.  It is well-established that the notice period in Or. Rev. Stat. § 30.275 begins to run when the plaintiff "knows that he or she has suffered some harm and knows that it is the result of tortious conduct," even if the plaintiff "did not know the full extent of the harm or that those facts had legal significance."  *Doe v. Lake Oswego School District*, 353 Or. 321, 335 (2013).  Under Or. Rev. Stat. § 30.275(2)(b), a plaintiff cannot maintain a tort action against a public body, its officers, its employees, or its agents unless sufficient "notice of claim" is given "within 180 days after the alleged loss or injury."  Or. Rev. Stat. § 30.275 incorporates a "discovery rule."  *See Adams v. Oregon State Police*, 289 Or. 233, 239 (1980) (so stating).  As a result, the 180-day notice period does not begin to run until the plaintiff knows or, in the exercise of reasonable care should know, of the alleged loss or injury.

Here, despite believing that he contracted Hepatitis B in May 2010 and Hepatitis C in July 2012, Plaintiff's tort claim notice was not received by Risk Management until February 8,

Page 11 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

2013.  (Washington Decl., ¶ 4, **Exhibit 1**.)  Because May 2010 is more than 180 days from

February 8, 2013, when Risk received Plaintiff's tort claim notice, his notice is untimely and as a

result his state law tort claims are barred as to his claims regarding his contracting Hepatitis B.

Even giving Plaintiff the benefit of the doubt and assuming that he was told that he had Hepatitis

C on July 31, 2012, Risk's receiving his notice of tort claim on February 8, 2013 is still more

than 180 days from when he admits he knew that he had contracted Hepatitis C.  For those

reasons, Defendants respectfully request that this Court grant their Motion for Summary

Judgment and request that this Court dismiss Plaintiff's state law negligence tort claims with

prejudice.

>    **C.**    **Defendants Peters, Nooth, Shelton, Gulick, and Bristol cannot be liable
>    under *respondeat superior*.**

Plaintiff's federal claim against Defendants Peters, Nooth, Shelton, Gulick, and Bristol

should be dismissed.  To establish a § 1983 claim against an individual defendant, a plaintiff

must plead personal participation by each defendant in the alleged constitutional deprivation.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable

to…§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution.").   Consequently, Plaintiff

cannot bring a federal claim against Defendants Peters, Nooth, and Shelton solely on the basis of

their being supervisors.  State officials are not liable under Section 1983 on a *respondeat

superior* theory.  *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691-94

(1978); *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987).  A "supervisor is only liable for

constitutional violations of his subordinates if the supervisor participated in or directed the

violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d

1040, 1045 (9th Cir. 1989); *see also Jane Doe A v. Special School District*, 901 F.2d 642, 645

(8th Cir. 1990) ("The individual defendants are subject to personal liability only if it can be

proved that they:  1) received notice of a pattern of unconstitutional acts committed by

Page 12 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
                MEMORANDUM OF LAW
            MRW/ts6/7647661-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

subordinates; 2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) failed to take sufficient remedial action; and 4) that such failure proximately caused injury.").

Plaintiff names Colette Peters, Mark Nooth, Dr. Steve Shelton, Dr. Garth Gulick, and Dr. Thomas Bristol as Defendants to his federal claim in their official and individual capacities. He alleges that those Defendants refused to inform him that he had Hepatitis B and deliberately denied him adequate, competent, and effective medical treatment for that condition despite their having knowledge of his serious medical needs. (Doc. # 1, ¶ 46.) However, he does not allege that each of those Defendants personally participated in acting with deliberate indifference to his serious medical needs. In fact, Plaintiff fails to specifically allege that any of the named Defendants personally participated in acting with deliberate indifference to his serious medical needs. (*See* Doc. # 1.) The Ninth Circuit has made clear that "liability under § 1983 must be based on the personal involvement of the defendant. There is no respondeat superior liability under section 1983." *Shallowhorn v. Molina*, 572 F. App'x 545, 546 (9th Cir. 2014). Plaintiff fails to allege or establish any facts in his complaint that would suggest or support a finding that the named Defendants personally participated in or directed the alleged violations, or knew of the violations and failed to act or prevent the alleged deprivation of Plaintiff's entitlement to medical care. For those reasons, Plaintiff's federal claim against the named Defendants should be dismissed as a matter of law.

### D. Plaintiff's federal claim against Defendants ODOC and SRCI and the remaining named Defendants in their official capacities are barred by the Eleventh Amendment.

If this Court does not dismiss Plaintiff's federal and state law tort claims because they are time barred, Plaintiff's federal claim should also be barred under the Eleventh Amendment as they are against the named Defendants sued in their official capacity. Plaintiff names ODOC and SRCI as Defendants in the caption of his complaint. A state or its officials or agencies may not be sued by private individuals in federal court unless the state has unequivocally consented to

Page 13 - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW
MRW/ts6/7647661-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

that action, or Congress has unequivocally expressed its intent under the Fourteenth Amendment to waive the immunity of the States.  *Board of Trustees of University of Alabama*, 531 U.S. at 356; *Seminole Tribe of Florida*, 517 U.S. at 54; *see also Quern v. Jordan*, 440 U.S. 332 (1979); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974).  The Eleventh Amendment otherwise bars any such action regardless of the nature of the relief sought.  *Cory*, 457 U.S. at 85.

Plaintiff has also brought suit against the remaining named Defendants in their official and individual capacities.  The U.S. Supreme Court has held that, absent a waiver by the State or a valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.  *See Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945) (so stating).   This bar remains in effect when State officials are sued for damages in their official capacity.  *Cory*, 457 U.S. at 90; *Edelman*, 415 U.S. at 663.  That is so because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents…"  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).   Moreover, individual defendants share in the Eleventh Amendment immunity afforded states and state agencies where the individuals are sued in their official capacities because such suits "are, in essence, actions against the government entity of which the officer is an agent."  *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201-02 (9th Cir. 1999).   Consequently, Plaintiff's suit against the named Defendants in their official capacity must fail.

Plaintiff's federal claim against the named Defendants in their individual capacity can only be maintained in this Section 1983 action if he can show that the Defendants, while acting under color of state law, deprived him of a federal right.  *See Monroe v. Pape*, 365 U.S. 167 (1961) (so stating).  As discussed below, Plaintiff has failed to establish that his Eighth Amendment rights were violated and therefore; his federal claim against the named Defendants in their individual capacity should also fail.  Plaintiff's federal claim necessarily fails against Defendants Peters, Nooth, Shelton, Gulick, and Bristol in their individual capacity because Plaintiff does not allege that he had any personal contact with those Defendants in this action or

Page 14 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
                 MEMORANDUM OF LAW
             MRW/ts6/7647661-v1

                                    Department of Justice
                                    1162 Court Street NE
                                    Salem, OR 97301-4096
                              (503) 947-4700 / Fax: (503) 947-4791

that those Defendants personally violated his constitutional rights.  Moreover, an official sued in his or her individual capacity can assert the personal immunity defense of qualified immunity, which is addressed later in this memorandum.  *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  For those reasons, Plaintiff's federal claim against Defendants ODOC and SRCI and the remaining Defendants in their official capacities in this suit should fail under the Eleventh Amendment; and that claim against them in their individual capacity should also fail.

### E.    Plaintiff fails to establish an Eighth Amendment violation.

In the event that this Court does not conclude that Plaintiff's federal claim is time barred by the statute of limitation or by the Eleventh Amendment, it should be dismissed because Plaintiff fails to establish an Eighth Amendment violation.  Plaintiff alleges that each of the named Defendants failed to provide him with a timely diagnosis for Hepatitis B and C and failed to properly treat him for those conditions in a timely manner.  (Doc. #1, ¶ 46.).  He alleges further that the failure of the named Defendants to inform him of his condition in a timely manner and to ensure that he received the necessary treatment for those conditions subjected him to cruel and unusual punishment and constituted deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.  (*Id*. at ¶¶ 46-56.)  However, Plaintiff's federal claim fails to establish an Eighth Amendment violation.

To establish an Eighth Amendment violation, Plaintiff must show that Defendants have demonstrated a deliberate indifference to his serious medical need.  *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  A medical need is serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  To prevail on an Eighth Amendment deliberate indifference claim, a prisoner must establish both (i) he suffered an objectively serious illness or injury while incarcerated and (ii) prison officials were subjectively aware of the

Page 15 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
              MEMORANDUM OF LAW

seriousness of the condition and deliberately denied or delayed access to medical care that could reasonably have been provided. *See Clement v. Gomez*, 298 F.3d 898, 904-905 (9th Cir. 2002) (so stating). None of those things occurred here.

Under applicable Ninth Circuit case law, "[a] determination of 'deliberate indifference' involves an examination of two elements: [1] the seriousness of the prisoner's medical need and [2] the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A finding of "deliberate indifference" necessarily requires "inquiry into a prison official's state of mind." *Farmer*, 511 U.S. at 838. Specifically, the Supreme Court has defined "deliberate indifference" in the Eighth Amendment context to mean that "a prison official cannot be found liable…for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

Plaintiff alleges in his federal claim that all named Defendants failed to inform him that he had been diagnosed with Hepatitis B in a timely manner causing the condition to advance to Hepatitis C and failed to provide him with adequate medical treatment for either condition in a timely manner. (Doc. #1, ¶¶ 46-56.) He alleges further that Defendants' delay in informing Plaintiff that he had the Hepatitis virus constituted deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (*Id.* at ¶¶ 47, 50-54.) That claim has no merit.

Plaintiff tested positive for Hepatitis C on July 9, 2010 and positive for a prior infection of Hepatitis B sometime before his incarceration in 2010. (Shelton Decl. ¶ 14.) After that diagnosis, ODOC Health Services staff members immediately began to address Plaintiff's condition with him by giving him the first in the series of combined vaccine injections for

Page 16 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Hepatitis A & B on July 2, 2010 and evaluating Plaintiff for Hepatitis C and establishing that Plaintiff wanted treatment for the virus on August 5, 2010. (*Id.* at ¶¶ 15 & 17.) Plaintiff was approved by the TLOC Committee for a liver biopsy in light of his Hepatitis C diagnosis on August 11, 2010. (*Id.* at ¶ 17.) On October 5, 2010, Plaintiff had the liver biopsy and on October 13, 2010, the results showed that he was at stage two liver fibrosis due to his Hepatitis C. (*Id.* at ¶ 23 & 24.) Plaintiff's blood was tested and his condition monitored from October 27, 2010 through February 10, 2012 to determine whether his fibrosis stage had increased. (*Id.* at ¶ 25.) On June 5, 2012, after his second liver biopsy on May 30, 2012, it was discovered that Plaintiff was at stage three liver fibrosis and he was approved for and began Hepatitis C treatment on September 5, 2012. (*Id.* at ¶¶ 36-40.) Consequently, Plaintiff received prompt and adequate medical treatment for his Hepatitis C.

In any event, applicable Ninth Circuit jurisprudence further establishes that a difference of medical opinion between an incarcerated prisoner and his or her health care provider regarding the efficacy or advisability of the medical treatment provided to the prisoner is "insufficient," as a matter of law, to establish deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health.'" *Id.* (quoting *Jackson*, 90 F.3d at 332).

Plaintiff's entire allegation for his federal claim is that his Eighth Amendment rights were violated because he was not provided with proper medical treatment for Hepatitis B and C causing him to suffer from the unnecessary and wanton infliction of pain. (Doc. # 1, ¶¶ 51, 52, & 54.) He does not allege that he was not provided with any medical treatment to address his medical needs. Instead, he alleges that the treatment was delayed and was not adequate causing

Page 17 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
            MEMORANDUM OF LAW
MRW/ts6/7647661-v1

his Hepatitis B virus to advance to Hepatitis C and subjected him to the unnecessary and wanton inffliction of pain.  (*Id*. at ¶¶ 51 & 52.)  That claim has no merit for the following two reasons.

First, Hepatitis B does not deteriorate into Hepatitis C.  (Shelton Decl., ¶ 6.)  Hepatitis B infects the liver and most adults who get it have it for a short period of time and then clear the virus.  (*Id*.)  Hepatitis C is a medical condition defined by the inflammation of the liver caused by the Hepatitis C virus (HCV).  (*Id*.)  Hepatitis C virus is commonly transmitted by blood to blood infections, such as intravenous drug usage, transfusions before 1985, unsterile tattoo needles, etc.  (*Id*.)

Second, Plaintiff does not allege how long his treatment was delayed.  Defendants presume that the delay was two months in that Plaintiff alleges that he contracted Hepatitis B in May 2010, but was not treated for it until July 2, 2010.  (Doc. # 1, ¶¶ 29 & 32.)  However, that presumption has no merit in light of the evidence in Plaintiff's medical records.  Plaintiff was given a combined vaccine injection for Hepatitis A & B on July 2, 2010 in an effort to prevent the spread of the disease if the patient consents, and he tested positive for chronic Hepatitis C on July 9, 2010 and for a prior infection for Hepatitis B that had since been cleared.  (Shelton Decl. ¶¶ 14 & 15.)  Plaintiff was evaluated for Hepatitis C treatment on August 5, 2010, which he requested, and the TLOC Committee approved Plaintiff's receiving a liver biopsy on August 11, 2010.  (*Id*. at ¶ 17.)  Because Plaintiff's opinion differs from Defendants' as to the adequacy of the medical treatment and how soon he received it does not give rise to an issue of fact as to whether his constitutional rights have been violated, Plaintiff has failed to establish that Defendants acted with deliberate indifference towards him in their treatment of his medical condition.

Additionally, nothing in Plaintiff's allegations support that Defendants acted with deliberate indifference.  He has not alleged that the treatment Defendants pursued for him was medically unacceptable under the circumstances.  Plaintiff merely alleges that he was not provided with adequate medical treatment, but does not allege what treatment he should have

Page 18 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
              MEMORANDUM OF LAW
         MRW/ts6/7647661-v1

                              Department of Justice
                              1162 Court Street NE
                              Salem, OR 97301-4096
                        (503) 947-4700 / Fax: (503) 947-4791

received instead.  Because Plaintiff's allegations that he received inadequate treatment for his Hepatitis C show nothing more than a "difference of medical opinion" as to the need to pursue one course of treatment over another, which is insufficient, as a matter of law, to establish deliberate indifference, his claim fails. *Jackson*, 90 F. 3d at 332.   Moreover, when medical treatment decisions are responsive to an inmate's needs and rooted in professional, medical judgment — even if such decisions are misguided or ineffectual — a claim for deliberate indifference cannot be sustained.  "[T]he propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action." *Enriquez v. Kearney*, 694 F.Supp.2d 1282, 1296 n. 13 (S.D. Fla. 2010).   Here, Plaintiff was cured by the treatment Defendants Gulick and Bristol provided to him, so the medical treatment was clearly responsive to Plaintiff's needs. (Shelton Decl. ¶ 54.)

For those reasons, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants were deliberately indifferent to his serious medical needs.  As a result, Defendants respectfully request that this Court grant their Motion for Summary Judgment and request that the Court dismiss Plaintiff's federal claim with prejudice.

### F.    Defendants are entitled to qualified immunity.

In the event that the Court does not accept the previous grounds provided for summary judgment, Plaintiff's federal claim is prevented by qualified immunity.  Qualified immunity shields government officials from suit when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances they confronted. *Brosseau*, 543 U.S. at 198.  The doctrine of qualified immunity protects "government officials performing discretionary functions…from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 828.  An official should be denied qualified immunity only when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

(1987).  Qualified immunity is immunity from suit, not merely a defense to liability.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Like absolute immunity, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.  *Mitchell*, 472 U.S. at 526.  Consequently, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

To determine whether an individual is entitled to qualified immunity, the first relevant inquiry is whether the official violated the plaintiff's constitutional rights.  *Saucier*, 533 U.S. at 201.  The second relevant concern is whether the law governing that right is clearly established.  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  The Supreme Court clarified that although courts *may* apply these questions in order, courts have the discretion to determine "whether that procedure is worthwhile."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Courts may end the inquiry if either question is answered affirmatively.  *Id.*

As discussed above, Defendants did not violate Plaintiff's Eighth Amendment right to be free from deliberate indifference to his serious medical needs because they provided him with adequate medical treatment for his Hepatitis C virus.  Plaintiff's medical records show that Plaintiff was properly treated for that medical condition as he was authorized to receive a "State-of-the-Art" combination of Ribavirin, Boceprevir, and Pegasys to eradicate the Hepatitis C virus.  (Shelton Decl. ¶ 40.)  That treatment was successful in curing Plaintiff of the Hepatitis C virus.  (*Id.* at ¶ 54.)  Even if Plaintiff were able to show that, viewing all facts in his favor, Defendants *had* violated his Eighth Amendment rights, Defendants would still be entitled to qualified immunity because it would not be clear to a reasonable prison official that the actions taken by Defendants were unlawful.

Page 20 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
                MEMORANDUM OF LAW
        MRW/ts6/7647661-v1

                        Department of Justice
                        1162 Court Street NE
                        Salem, OR 97301-4096
                    (503) 947-4700 / Fax: (503) 947-4791

For those reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment and request that this Court dismiss with prejudice Plaintiff's federal claim in its entirety.

## VII.    CONCLUSION

The material facts before the Court show that Plaintiff filed his complaint beyond the two-year statute of limitations and for that reason, his complaint should be dismissed.  Plaintiff claims that Defendants were responsible for his contracting Hepatitis C and violated his Eighth Amendment rights by their delay in informing him that he had Hepatitis C and by providing him with inadequate medical treatment for the condition.  The evidence in the record shows that Plaintiff knew that he had contracted Hepatitis C no later than August 5, 2010, yet he did not file his complaint until July 21, 2014.

The material facts before the Court show that Plaintiff filed his tort claim notice regarding his state law negligence tort claims beyond the 180 days allowed to do so and those claims are time barred as a result.  Even using Plaintiff's own allegations that he learned that he had Hepatitis C on July 19, 2012, his filing of his tort claim notice on February 8, 2013 was untimely and his state negligence tort law claims should be dismissed on that basis.

The material facts before the Court show that Defendants Peters, Nooth, and Shelton were named as Defendants solely on the basis of their being supervisors.  None of those Defendants personally participated in Plaintiff's alleged constitutional deprivation.  Because vicarious liability is inapplicable to Section 1983 lawsuits and they cannot be named as Defendants under a *respondeat superior* theory, Plaintiff's federal claim against them should be dismissed as a matter of law.  Plaintiff's federal claim against Defendants Gulick and Bristol should be dismissed as a matter of law because he fails to allege that they personally participated in his alleged constitutional deprivation also.

The material facts before the Court show that Plaintiff has brought his claims in federal court against Defendants for actions they allegedly took in their official capacity, which is a

Page 21 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
        MEMORANDUM OF LAW
        MRW/ts6/7647661-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

violation of the Eleventh Amendment.  Because Defendants are state agencies and state officials acting in their official capacity, Defendants were entitled to Eleventh Amendment immunity from suit in this case and Plaintiff's federal claim should be dismissed on that basis.

The material facts before the Court show that Plaintiff's claim that he was treated with deliberate indifference regarding his serious medical needs has no merit.  Plaintiff cannot establish a genuine issue of material fact with respect to his Eighth Amendment claim that Defendants failed to provide him with timely and adequate medical treatment.  In fact, Plaintiff received more than adequate medical care and was actually cured of his Hepatitis C virus by the medical providers who treated him.

The material facts before the Court show that even if this Court concluded that Defendants violated Plaintiff's Eighth Amendment rights by failing to provide him with timely and adequate medical treatment, because it would not be clear to reasonable prison officials that Defendants acted unlawfully, Defendants would be entitled to qualified immunity.  For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment and request that this Court dismiss Plaintiff's complaint with prejudice in its entirety.

DATED August __31__, 2016.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_____*s/ Michael R. Washington*_____
MICHAEL R. WASHINGTON #873679
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
Michael.R.Washington@doj.state.or.us
Of Attorneys for Defendants

Page 22 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING
              MEMORANDUM OF LAW
       MRW/ts6/7647661-v1

# The Deposition of

## MOISES LARIOS MARTINEZ
July 8, 2016

MOISES LARIOS MARTINEZ
v.
OREGON STATE DEPARTMENT OF CORRECTIONS
et al

Case No.:  2:14-CV-01161-SU



MOISES LARIOS MARTINEZ

1   a job and that was storing the clothing.

2       Q.  **Did you ever work in the kitchen?**

3       A.  That was a long time after when I was already

4   ill.

5       Q.  **Had you already been diagnosed with hepatitis**

6   **C?**

7       A.  Yes.  And they sent me to work in the kitchen

8   like that.

9       Q.  **And now you understand that you have hepatitis**

10  **C; correct?**

11      A.  Yes, that's right.

12      Q.  **Where do you think you contracted hepatitis C?**

13      A.  At Snake River.

14      Q.  **Do you know when you were diagnosed with**

15  **hepatitis C?**

16      A.  Yes, they told me -- they gave me that

17  diagnosis in 2012, which is when they told me that I

18  was going to have to go undertake -- undergo really

19  rigorous treatment for it because it was already in

20  its advanced stages and that I needed to have this

21  treatment done rapidly, besides which the doctor told

22  me I was already at phase three.

23      Q.  **Was it after that time that you went to work in**

24  **the kitchen?**

25      A.  No.  That was after the treatment was just

1    about over.  They gave me that treatment first and

2    they sent me to work in the kitchen while I was still

3    feeling quite ill.

4        Q.  Why did you stop working in the kitchen?

5        A.  I stopped working in the kitchen because I

6    continued feeling ill, and they continued giving me

7    the treatment.

8        Q.  Were you able to walk at that time?

9        A.  There was a -- for a time I could not walk

10   because the medication was just too heavy and I

11   actually had to get around by wheelchair.

12       Q.  Before you were told that you had hepatitis C,

13   were you given medication for anything at Snake

14   River?

15       A.  Yes.  They gave me medication or the treatment

16   for tuberculosis, which was supposedly for six months

17   but it only lasted three months.

18       Q.  Only lasted three months?

19       A.  Yes, because I began feeling ill and I began

20   bleeding from the -- from the mouth -- from the mouth

21   and my nose.

22       Q.  When that bleeding occurred how long was that

23   before you were told you had hepatitis C?

24            THE INTERPRETER:  Counsel, say again.  I

25   didn't hear.  It was before or after?

MOISES LARIOS MARTINEZ

1    BY MR. WALKER:

2        Q.  When that bleeding began, how long -- was that

3    before you were told that you had hepatitis C?

4        A.  That was about three or four months before.

5        Q.  Mr. Martinez, do you need a break?

6        A.  Please.

7        Q.  Okay.

8            MR. WALKER:  We're going to go off the

9    record here, Mr. Washington.  Is that okay if we go

10   off the record for about five minutes?

11           MR. WASHINGTON:  Yes, that's fine.

12           MR. WALKER:  Can we just end the call and

13   then call back in about five minutes?

14           MR. WASHINGTON:  If that's the way you

15   want to do it.

16           MR. WALKER:  I'm getting the nod from the

17   videographer.  That's probably good.  We'll call you

18   back in about five minutes sharp.

19           MR. WASHINGTON:  Okay.

20           (Whereupon, a brief recess was taken.)

21           MR. WALKER:  We are back on the record.

22   All of the same parties are present here in this room

23   that were at the very beginning.

24           And, Mr. Washington, are all the same

25   members present in your room as they were in the

MOISES LARIOS MARTINEZ

1     A.   No.

2     Q.   How did you feel when you first came into

3   prison in 2010?

4     A.   When I first got to prison I felt stable.   I

5   didn't have any -- any illness or any ill feelings or

6   feelings of illness or anything.

7     Q.   Did you have any liver biopsies in 2010 when

8   you came into prison?

9     A.   No, not at all at that time, and they didn't do

10  that until 2012 when they told me that I was

11  already -- had already contracted this and that I was

12  contagious and that I was quite advanced in my

13  condition.

14    Q.   When did you start to feel ill in prison?

15    A.   I began feeling ill after they had done this

16  treatment for tuberculosis.

17    Q.   When -- when did you get treatment for

18  tuberculosis?

19    A.   I don't remember exactly the date but I think

20  it was about four months before they told me finally

21  that I had hepatitis C.

22    Q.   So in 2012?

23    A.   Yes, because at that time I was in -- I was in

24  a privileged area and after that I began feeling ill

25  with -- because of the treatment for the

1    about 700 pesos.

2        Q.  **And how long will that last?**

3        A.  The first time it lasted seven days.

4        Q.  **And have you had it since then?**

5        A.  I went again to see the doctor, and then he

6    prescribed another medication to me and that one cost

7    me $400 -- or pesos, I should say.

8        Q.  **What did you have to sell to afford those**

9    **things?**

10       A.  I had to sell a TV set.  I had to sell a

11   motorcycle that I had.  And, really, I got very

12   little for that because these items were already

13   used.

14       Q.  **All right.  I think that's all the questions I**

15   **have.**

16       A.  Very well.

17           MR. WALKER:  Anymore questions,

18   Mr. Washington?

19           MR. WASHINGTON:  Just one more.

20

21               FURTHER EXAMINATION

22

23   BY MR. WASHINGTON:

24       Q.  **Mr. Martinez, you stated that the doctor told**

25   **you that you would need a biopsy in six months after**

MOISES LARIOS MARTINEZ

1   you left prison.  Did he tell you anything else?

2      A.  The doctor at the prison told me that I would

3   need this biopsy and also told me that I should

4   continue my medical regiment.  However, because I

5   didn't have the resources to be able to continue, I

6   was not able to do it.

7      Q.  Okay.  Thank you.

8          MR. WASHINGTON:  I don't have anything

9   further.

10          MR. WALKER:  This will mark the end of the

11   perpetuation deposition.  We're going to go off the

12   record.

13          Mr. Martinez, you have the opportunity to

14   read the transcript that's created in this case and

15   sign it to make sure it's accurate before it is

16   provided to the parties.  Do you want to do that or

17   do you trust that she'll do a good job and just allow

18   her to release it the way she prepares it?

19          THE WITNESS:  Then I will trust in this.

20          MR. WALKER:  I think he's waiving read and

21   sign.

22          THE WITNESS:  Yes, that's right.

23          (Whereupon, the deposition was concluded

24   at 11:25 a.m.)

25

# C E R T I F I C A T E

I, MARY T. JACKS, a Court Reporter and Notary Public for the State of Oregon, hereby certify that the proceedings in the titled matter were taken before me at the time and place set forth in the caption hereof; that at said time and place, I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were transcribed under my direction; and the foregoing pages constitute a full, true and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Portland, Oregon this 26th day of July, 2016.

_____

Mary T. Jacks

Court Reporter

Notary Public

OFFICIAL STAMP
MARY THERESA JACKS
NOTARY PUBLIC-OREGON
COMMISSION NO. 932164
MY COMMISSION EXPIRES OCTOBER 01, 2018